IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IBRAHIM ABDUL-RAHIM,

   Plaintiff,

     v.

AIRTRAN AIRWAYS,

   Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-3857-TWT

ORDER

This is a Railway Labor Act ("RLA") case. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 33], which is DENIED.

I. Introduction

Plaintiff Ibrahim Abdul-Rahim began working for Defendant AirTran Airways as a ramp agent in 2003. (Pl.'s Br. In Opp. To Def.'s Mot. for Summ. J., Ex. A at 15-16.) The ramp agents at AirTran are not represented by a union. (Def.'s Mot. for Summ. J., Ex. A at ¶ 6.) Since 2003, two organizations have attempted to unionize the ramp agents and customer service representatives. (Id. at ¶ 7.) Rahim openly supported both organizations during their campaigns. (Pl.'s Br. In Opp. To Def.'s Mot. for Summ. J., Ex. A at 40-41, 100-101.) The most recent campaign began in late 2007. (Id. at 46.) Around the same time, Rick Pelc, AirTran's General Manager for

Atlanta, offered Rahim a promotion to duty manager. (Id. at 46-48.) Rahim declined the promotion and continued to support the union campaign as a ramp agent. (Id.)

Ramp agents load and unload baggage from cargo bins on the underside of aircraft. Graffiti in cargo bins is a recurring problem. (Def.'s Mot. for Summ. J., Ex. D at 22.) In February 2008, a ramp agent called AirTran's safety department to report graffiti in the cargo bin of Aircraft 795. (Def.'s Mot. for Summ. J., Ex. D at 16, Ex. 3.) The graffiti read: "Air Tran Sucks Ass Vote for Union Fuck Jack Smith." (Id. at Ex. 3.) A few weeks later, management received reports of graffiti in four other cargo bins. (Id. at Ex. 2.) Stan Whitehead, AirTran's Manager of Facilities and Contract Services, conducted an investigation to determine who had access to the affected aircraft. He reviewed gate rosters but did not interview the employees to determine whether they wrote graffiti in the affected cargo bins. (Pl.'s Br. In Opp. To Def.'s Mot. for Summ. J., Ex. E at 20, 63.) He also asked Arthur Anthony, a handwriting expert, to compare employees' handwriting samples to the graffiti. (Id. at 24-25.) According to Rahim, AirTran initially submitted only his handwriting sample, even though gate rosters showed that other employees had equal or greater access to the affected aircraft. (See id. at 49-50, Ex. T.) After Anthony matched Rahim's handwriting to the graffiti in Aircraft 795, AirTran submitted an additional 120

samples. (See id.; Def.'s Mot. for Summ. J., Ex. A at ¶ 16.) Anthony made no other matches. (Def.'s Mot. for Summ. J., Ex. A at ¶ 20.)

AirTran fired Rahim in May 2008. The company contends that Rahim was fired for writing graffiti in the cargo bin of Aircraft 795 in violation of company policy. (Def.'s Mot. for Summ. J., Ex. C at ¶¶ 8-10.) Rahim appealed his termination to AirTran's peer review panel. (Id. at ¶ 24.) The peer review panel upheld AirTran's decision to fire Rahim. (Id. at ¶ 25.) Rahim then filed this action alleging that AirTran violated the Railway Labor Act. AirTran now moves for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. Discussion

The Railway Labor Act ("RLA") makes it unlawful for any carrier to interfere with, influence, or coerce its employees in their choice of a representative. 45 U.S.C. § 152, Third. The RLA also provides that employees have the right to organize and bargain collectively through representatives of their own choosing and that it is unlawful for any carrier to deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, or to interfere in any way with the organization of its employees. 45 U.S.C. § 152, Fourth. Rahim alleges that AirTran violated the RLA by terminating his employment. To establish that his termination violated the RLA, Rahim must show that protected union activity was a "substantial or motivating factor in [his] discharge." Lebow v. American Trans Air, Inc., 86 F.3d 661, 666 (7th Cir. 1996). To do so, he must demonstrate that: "(1) he engaged in union activities; (2) [AirTran] knew of [his] involvement in protected activities; (3) [AirTran] harbored animus towards those activities; and (4) there was a causal connection between the [AirTran]'s animus and the discharge decision." Id. (quoting Carry Companies of Illinois, Inc. v. NLRB, 30 F.3d 922, 927 (7th Cir. 1994)). If Rahim establishes a prima facie case, the burden

shifts to AirTran to establish that Rahim "would have been fired anyway for a valid reason." Id. (analogizing cases brought under the RLA to cases brought under the National Labor Relations Act).

AirTran first asserts that Rahim cannot establish a prima facie case. The Court disagrees. It is undisputed that Rahim engaged in union activities. It is also undisputed that Pelc and other employees involved in the graffiti investigation knew about Rahim's participation in the union campaign. Moreover, the graffiti contains a pro-union statement that would allow a reasonable jury to infer knowledge by Amy Morris, the ultimate decision-maker. (See Def.'s Mot. for Summ. J., Ex. 3.) Rahim also offers evidence supporting his allegations that AirTran harbored anti-union animus and that such animus contributed to his termination. He provides deposition testimony stating that he was told by supervisors to "watch [him]self" because he supported the union campaign. (Pl.'s Br. In Opp. To Def.'s Mot. for Summ. J., Ex. A at 43-44.) He also offers documentary evidence supporting his argument that AirTran focused more heavily on "specific graffiti [relating] to union activities." (Id. at Ex. L.) Additionally, he points to evidence suggesting that AirTran specifically targeted Rahim by initially submitting only his handwriting sample even though other employees had equal or greater access to the affected aircraft. (See Pl.'s Br. In Opp. To Def.'s Mot. for Summ. J., Ex. E at 49-50, Ex. M, Ex. T.) If true, the allegations

supported by this evidence are sufficient to establish a prima facie case under the RLA.

AirTran next asserts that Rahim "would have been fired anyway for a valid reason." AirTran presents ample evidence to support this assertion. However, Rahim offers affidavits from three AirTran employees stating that the company had not previously fired employees for writing graffiti in cargo bins. (See id. at Ex. E, p. 14, Ex. F ¶¶ 3-6, Ex. G ¶¶ 3-6.) Although AirTran offers legitimate reasons for departing from its previous practice, there remains a triable issue of fact as to the validity of its stated reasons. Cf. Batey v. Stone, 24 F.3d 1330, 1336 (11th Cir. 1994) ("[T]his Circuit has long stated that the granting of summary judgment in [analogous Title VII] cases, which usually necessarily involve examining motive and intent, is especially questionable."). There is a genuine issue of fact as to whether the reasons given for firing the Plaintiff were a pretext for retaliation for the Plaintiff's pro-union activities.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 33] is DENIED.

SO ORDERED, this 29 day of December, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge